SHOWS *v.* STATE.

(In Banc. June 15, 1936.)

[168 So. 862. No. 32149.]

A. F. Kelly, of Hattiesburg, for appellant.

**Wm. H. Maynard**, Assistant Attorney-General, for the state.

**Ethridge, J.,** delivered the opinion of the court.

Ed Shows, Jr., was indicted in the circuit court of Forrest county on a charge of manslaughter, and on trial was convicted thereof and sentenced to serve a term of two years in the state penitentiary, from which he appeals here.

Omitting the caption, the indictment alleges that "Ed Shows, Jr., on the 23 of November, 1935, in Forrest County, aforesaid, did wilfully, unlawfully and feloniously kill and slay George Davis, a human being, against the peace and dignity of the State of Mississippi."

The prosecution was based upon section 1002, Code 1930, reading as follows: "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter."

The testimony was conflicting as to which side of the highway Shows was driving upon, and also as to the rate of speed of the trucks involved in this case. Shows was going south on the highway, and the truck being

driven by J. W. Carr, on which the deceased was riding, was going north when the collision in which Davis was killed took place. It occurred after dark, but early in the evening.

The testimony shows that the truck driven by the appellant, Shows, was seven and one-half feet wide, with a steel body, and was somewhat on the order of a railroad box car, and was used for hauling freight. It had two headlights, and two clearance lights at the front and rear on the bottom edge of each corner. The truck driven by G. W. Carr, upon which Davis was riding when killed, was six and one-half feet wide, had no clearance lights, but all other lights usually on cars were burning.

The testimony for the state tended to establish that Shows was driving just over the center line going south at a high rate of speed.

The testimony for Shows tended to establish that his left wheels were on the right-hand side of the center line of the highway, and that the truck driven by Carr, on which Davis was killed, was hugging the center line of the highway. The two trucks did not have a head-on collision, but scraped, or, as the witnesses said, "sideswiped" each other. The truck driven by Carr contained a number of people, and Davis and another were sitting on the left-hand side, and, when the trucks sideswiped, Davis was crushed, killed, and thrown into the highway.

Shows testified that just before he met the truck driven by Carr its lights flashed in his eyes and blinded him (Shows), and he could not see the men on the truck driven by Carr, and that when the trucks sideswiped, appellant looked out of the window and saw the other truck going on, and did not see the two men who had been scraped off and killed, and he concluded that no damage had been done, and, consequently, he proceeded on to his destination, Hattiesburg, where he was arrested.

As stated, the evidence for the state tended to show that the truck driven by appellant was partly on the

left-hand side of the highway and partly on the right-hand side, going at a high rate of speed.

The evidence being thus conflicting, we think the jury could have found either way.

The court below gave the following instructions for the state:

"The court instructs the jury for the State that 'culpable negligence' is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case.

"The court instructs the jury for the State that 'culpable negligence' is the want of that usual and ordinary care and caution in the performance of an act, usually and ordinarily exercised by a reasonable and prudent person under similar circumstances and conditions.

"The court instructs the jury that it is unlawful to operate a motor truck vehicle on a public highway at a greater rate of speed than 30 miles per hour. The court instructs the jury for the State that if, from all the evidence in the case, you believe beyond a reasonable doubt, that the defendant drove his motor truck vehicle on the left hand side of the center of the highway, and negligently and recklessly collided with the truck on which the deceased, George Davis, was riding, causing his death, then, under the law, the defendant is guilty as charged in the indictment, and you should so find.

"The court instructs the jury for the State that, the State is not required to prove, in this case, any malice or intent on the part of the defendant to kill the deceased, or to do him any personal injury or bodily harm, and that if the State has proved, beyond a reasonable doubt, that the defendant was guilty of culpable negligence as defined in the instructions herein granted the State, and that the deceased was struck and injured and killed on said highway, in Forrest County, Mississippi, by said motor truck which the defendant was driving, as a proxi-

mate and direct result of the culpable negligence, if any, of the defendant, then such killing was without authority of the law, was manslaughter, and it is the sworn duty of the jury to convict the defendant.''

The court gave the following instructions for the appellant:

''The court instructs the jury for the defendant that wilful negligence or culpable negligence will not be inferred when the result may be reasonably attributed to slight negligence or inattention, and before you can convict the defendant, you must believe, beyond a reasonable doubt, that the defendant was guilty of culpable negligence.

''The court instructs the jury for the defendant that every negligent act does not give rise to criminal responsibility, and that before you can convict the defendant in this case, his negligence, if any, must be of a greater degree than is ordinarily necessary to impose civil liability; that the conduct of the defendant must be such as to show a reckless disregard for the safety and lives of others, and that his negligence must rise to the degree of culpability.

''The court instructs the jury that culpable negligence in manslaughter statute means negligence of gross character, showing reckless disregard for human life, or entire want of care, raising presumption of indifference to consequences, and unless you believe from the evidence beyond a reasonable doubt that the defendant was guilty of such negligence, then it is your sworn duty to find the defendant not guilty.''

The giving of the above instructions is assigned as error, and it will be seen that the first instruction set out in this opinion for the state defines ''culpable negligence'' in terms so as to constitute simple negligence. These instructions were taken from the case of Sims v. State, 149 Miss. 171, 115 So. 217, 219, without embracing in the definitions an important part of the decision deal-

ing with that subject. In that case this court said: "It is unquestionably true that the negligence must be of a higher degree, in order to convict of manslaugter, than would be required to hold a party liable in a civil action. But culpable negligence, like reasonable doubt, is an undefinable phrase, and we have read many attempted .definitions thereof. Culpable negligence must be ascertained from the facts of each case, and no iron-clad statement can be set forth as applicable to all classes of cases. In 1 Words and Phrases, Second Series, p. 1174, the following statement is set forth as a definition, which we think will serve as a *general guide* to a correct conclusion as to what constitutes culpable negligence. It is as follows: 'The omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case.' " (Italics ours.)

In the Sims case it will be seen that this definition taken from Words and Phrases was to serve only as a general guide, but the prosecuting attorney took the quotation from Words and Phrases without embracing the other part of the opinion, which we think was improper and caused the jury to believe, or, at least, was capable of causing them to believe, that simple negligence would make out a case of manslaughter where death resulted therefrom.

This court recently approved the Sims case, supra; Gregory v. State, 152 Miss. 133, 118 So. 906, and Robertson v. State, 153 Miss. 770, 121 So. 492, but in the Gregory case said that: "Criminality cannot be predicated upon mere negligence or carelessness, but it has been said that it may be predicated upon 'that degree of negligence or carelessness which is denominated as gross and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish

evidence of indifference to consequences,' and we think this statement is peculiarly applicable to the facts in this record.''

We have given the case at bar careful consideration by the full court, and we have concluded that this statement in the Gregory case, just quoted, constitutes the law applicable to the degree of negligence required to make a case of culpable negligence in a criminal prosecution; and we think the instructions given for the state made a conviction on simple negligence, and were improper in a criminal prosecution, and we disapprove thereof.

In order that prosecuting attorneys and circuit judges may not be further misled by the Sims case, and the expressions in the later decisions, we withdraw the definition, holding it to be improper, and hold that the courts should conform to the definition quoted from the Gregory case, supra.

While we do not deem it necessary to go to other states for definitions, and do not intend to adopt specifically such definitions, we think it proper to note that the rule herein announced seems to be the prevailing rule in other jurisdictions. 29 C. J. 1154, sec. 141; State v. Melton, 326 Mo. 962, 33 S. W. (2d) 894; People v. Waxman, 232 App. Div. 90, 249 N. Y. Supp. 180; People v. Angelo, 219 App. Div. 646, 221 N. Y. Supp. 47, and case note in 90 Am. St. Rep. 571, 572.

It follows from what we have said that the judgment of the court below should be reversed, and the cause remanded for a new trial.

Reversed and remanded.